## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

REGINA SERGIYENKO AND
RUSSELL JOLY,

                Plaintiffs,

v.

                Case No. 17-2321-DDC-KGG

MCCUSKER HOLDING CORP.,

                Defendant.

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiffs' Amended Motion for Default Judgment against defendant McCusker Holding Corp.  Doc. 10.  On February 15, 2018, the court held a hearing on this motion.  Both plaintiffs Regina Sergiyenko and Russell Joly testified at the hearing and presented other evidence.  Plaintiffs asked the court to enter default judgment against defendant McCusker Holding Corporation on the three claims they assert against it:  (1) Fair Labor Standards Act ("FLSA") violations, 29 U.S.C. § 201 *et seq.*, (2) Kansas Wage Payment Act ("KWPA") violations, Kan. Stat. Ann. § 44-313 *et seq.*, and (3) breach of contract. Plaintiffs also made a damage request at the hearing, asking the court to award them damages for unpaid contract wages, unpaid overtime wages, unpaid expenses, liquidated damages, state statutory penalties, and attorney's fees.

After carefully considering the evidence adduced at the February 15, 2018 hearing and plaintiffs' submissions, the court grants plaintiffs' Amended Motion for Default Judgment against McCusker Holding Corporation and awards damages to each plaintiff.  The court awards plaintiff Regina Sergiyenko:  $13,730.76 for unpaid contract wages, $2,055.94 for unpaid expenses, $4,903.50 for FLSA unpaid overtime wages, $4,903.50 for FLSA liquidated damages,

and $13,730.76 for KWPA statutory penalties.  The court awards plaintiff Russell Joly:

$16,384.56 for unpaid contract wages, $5,775.00 for unpaid expenses, $3,115.80 for FLSA

unpaid overtime wages, and $3,115.80 for FLSA liquidated damages.  The court also awards

plaintiffs their attorney's fees in the amount of $17,610.00 and costs in the amount of $1,353.69.

The court explains how it reaches this decision below.

### I.    Procedural Background

On June 1, 2017, plaintiffs filed this lawsuit against their former employers McCusker

Holding Corporation ("McCusker") and Willard L. McCusker.[1]  Doc. 1.  Plaintiffs served the

Complaint on both defendants on July 10, 2017.  Doc. 4.  Neither defendant responded to the

Complaint or otherwise appeared in the lawsuit.

On September 12, 2017, plaintiffs filed an Application for Clerks Entry of Default

against both defendants.  Doc. 5.  On September 14, 2017, the Clerk entered default against both

defendants under Federal Rule of Civil Procedure 55(a).  Doc. 6.

On January 11, 2018, plaintiffs filed an Amended Motion for Default Judgment.  Doc.

10.  The motion seeks a default judgment against defendant McCusker.  On February 14, 2018,

plaintiff voluntarily dismissed defendant Willard L. McCusker from the lawsuit without

prejudice.  Doc. 16.  So, defendant McCusker is the only defendant remaining in the case.  The

court thus refers to McCusker as the "defendant"—in the singular form—for the remainder of

this Order.

To date, defendant never has answered or otherwise appeared in this lawsuit.  Defendant,

thus, is in default.  Also, defendant never has appeared personally or by a representative at any

time in this case.  Thus, written notice of the application for default to defendant is not required.

---

[1]    The Amended Complaint identifies Willard L. McCusker as "a principal owner/officer of
McCusker."  Doc. 3 ¶ 4.

*See* Fed. R. Civ. P. 55(b)(2) (requiring seven days' notice of the application for default judgment only when "the party against whom a default judgment is sought has appeared personally or by representative"); *see also Winfield Assocs., Inc. v. Stonecipher*, 429 F.2d 1087, 1091 (10th Cir. 1970) (denying relief from a default judgment entered by a district court in Illinois without notice to defendant because the Illinois court concluded that defendant had not entered an appearance in the case); *Local Union No. 226 Int'l Bhd. of Elec. Workers Open End Pension Tr. Fund v. Flowers Elec., Inc.*, No. Civ. A. 04-2237-CM, 2004 WL 2278562, at *1 (D. Kan. July 23, 2004) (holding that defendant's acceptance of service was not an appearance for purposes of Rule 55(b)(2), and thus concluding that no written notice of the motion for default judgment was required because defendant had not appeared in the action).

Nevertheless, plaintiffs' counsel provided notice of their Amended Motion for Default Judgment to defendant in several ways. First, plaintiffs' counsel mailed copies of the Amended Motion for Default Judgment and the Notice of Hearing on the motion to defendant's registered agent in Nevada and to Mr. McCusker's personal address in Texas. Also, plaintiffs' counsel emailed the Amended Motion for Default Judgment and the Notice of Hearing to Mr. McCusker's email address. Plaintiffs' counsel previously had used this email address to correspond with Mr. McCusker. And plaintiffs' counsel sent the email with an electronic read receipt verifying that the email recipient received and opened the email.

## II.    Legal Standard

Federal Rule of Civil Procedure 55 provides a two-step process for securing a default judgment. First, Rule 55(a) allows the Clerk to enter default against a party who "has failed to plead or otherwise defend" a lawsuit. Second, after the Clerk enters default, plaintiff may request the Clerk to enter judgment in an amount that is "a sum certain or a sum that can be made

certain by computation." Fed. R. Civ. P. 55(b)(1). But, when a plaintiff's claim does not seek

such a sum, plaintiff must apply to the court for a default judgment under Rule 55(b)(2). When

considering a motion for default judgment, the court may hold a hearing if "it needs to (A)

conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any

allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

"Once the default is established, defendant has no further standing to contest the factual

allegations of plaintiff's claim for relief." *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F.

Supp. 3d 1269, 1274 (D. Kan. 2016) (citations and internal quotation marks omitted). The court

accepts as true the well-pleaded factual allegations from plaintiff's Complaint but not allegations

about the amount of damages. *Id.*

But, even after default, "'it remains for the court to consider whether the unchallenged

facts constitute a legitimate cause of action, since a party in default does not admit mere

conclusions of law.'" *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A Charles

A. Wright et al., *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)). The district court

exercises broad discretion when deciding whether to enter a default judgment. *Mathiason*, 187

F. Supp. 3d at 1274.

A default judgment also does not establish the amount of damages. *Id.* at 1274–75.

Instead, "[p]laintiff must establish that the amount requested is reasonable under the

circumstances." *Id.* at 1275 (citing *DeMarsh v. Tornado Innovations, LP*, No. 08-2588-JWL,

2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009)). A court may award damages "'only if the

record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed

affidavits establishing the necessary facts.'" *DeMarsh*, 2009 WL 3720180, at *2 (quoting

*Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (further citations and internal quotation marks omitted)).

### III.     Findings of Fact

The court finds that plaintiffs are entitled to recover damages for their FLSA, KWPA, and breach of contract claims, based on these facts, taken from plaintiffs' Complaint as well as testimony and evidence presented at the February 15 hearing.  Both plaintiffs testified during this hearing.  Defendant neither appeared personally or by a representative at the hearing.  Defendant thus presented no witnesses or evidence on its behalf.  Defendant also did not cross-examine either plaintiff.  The court found each plaintiff's testimony credible and incorporates their testimony into its factual findings below.

### A.   Facts Establishing FLSA and KWPA Violations and Breach of Contract

Defendant is a company who assists other companies with processing extended warranties.  It operates a call center in Texas.  There, defendant's employees make inbound and outbound telephone calls to other states in the country.

### *Plaintiff Regina Sergiyenko's Employment*

On October 24, 2016, defendant hired plaintiff Regina Sergiyenko as its Executive Vice President.  Ms. Sergiyenko and defendant entered into a written employment agreement.  The agreement provided that defendant would pay Ms. Sergiyenko an annual salary of $119,000 plus commissions.  Defendant also agreed to reimburse Ms. Sergiyenko for her work expenses.  Ms. Sergiyenko primarily worked for defendant from her home in Kansas.  But she sometimes traveled to the call center in Texas to perform work in that location.

From October 2016 through January 2017, defendant paid Ms. Sergiyenko her salary and expense reimbursements.  But, beginning in February 2017, defendant stopped paying Ms.

Sergiyenko any salary.  Also, Ms. Sergiyenko regularly worked more than 40 hours in a workweek, but received no overtime compensation for such work.  Ms. Sergiyenko testified that she worked from 8:00 a.m. to 7:00 or 8:00 p.m. every day, with a 30 minute meal break.  She estimated that she worked a minimum of 10.5 hours each day for the six weeks that she worked for defendant.

After February 2017, Ms. Sergiyenko continued to perform work for defendant even though she never received a salary or expense reimbursement.  She did so because Mr. McCusker repeatedly responded to her demands for payment by promising that the company would pay her soon.  But it never did.  So, on March 10, 2017, Ms. Sergiyenko ended her employment with defendant because it had failed to pay her.

### Plaintiff Russell Joly's Employment

On January 3, 2017, defendant hired plaintiff Russell Joly as Vice President of Operations and Strategy.  Mr. Joly worked for defendant in its office located in Coffeyville, Texas.  Mr. Joly and defendant entered into a written employment agreement.  It provided that defendant would pay Mr. Joly an annual salary of $90,000 plus commissions.  Defendant also agreed to reimburse Mr. Joly's expenses.  Mr. Joly never received any compensation from defendant.  He also never received reimbursement for his expenses.

On February 15, 2017, Mr. Joly told Mr. McCusker that he was leaving his employment because the company had failed to pay him.  In response, Mr. McCusker offered to change Mr. Joly's work status.  On February 25, 2017, Mr. Joly and "McCusker Corp." entered into a consulting agreement.  Mr. McCusker and Keith Lee, General Counsel, signed the agreement on behalf of "Client, McCusker Holding Corp. and Subsidiaries."[2]  Defendant agreed to pay Mr.

---

[2]    Based on the facts presented, the court concludes that defendant entered into this contract with Mr. Joly, even though the body of the contract refers to "McCusker Corp." and not McCusker Holding

Joly a $3,000 monthly retainer for 45 hours of work a week and $125 per hour for each additional hour worked beyond 45 hours a week.  Defendant also agreed to pay Mr. Joly commissions and to reimburse him for expenses.  Defendant never paid Mr. Joly for work performed or expenses incurred under the consulting agreement.

During his entire employment, Mr. Joly worked at least 50 hours a week but received no overtime compensation.  Mr. Joly continued to work for defendant through March and April 2017.  After that, he quit because the company never had paid him for his work.

### B.  Facts Establishing the Type and Amount of Plaintiffs' Damages

Ms. Sergiyenko testified that defendant never paid her for six weeks of work.  She earned $2,288.46 per week.  So, she seeks $13,730.76 (6 x $2,288.46) in unpaid salary.  Ms. Sergiyenko also testified that defendant never paid her expense reimbursements after January 2017.  Ms. Sergiyenko prepared a summary of those expenses and submitted them as an exhibit at the hearing.  She totaled her unpaid expense reimbursements as $2,055.94.  Ms. Sergiyenko also testified that she worked at least 52.5 hours a week during her six weeks of employment but never received overtime compensation.

Mr. Joly testified that he earned $1,730.76 per week under his first written employment agreement that governed the first six weeks of his employment with defendant.  So, he seeks $10,384.56 (6 x $1,730.76) in unpaid salary.  He also seeks $6,000 in unpaid contractual wages for the two months that he worked for defendant under the second agreement—the consulting agreement.  Mr. Joly also testified that defendant never paid his expense reimbursements.  Mr. Joly prepared a summary of those expenses and submitted them as an exhibit at the hearing.  He totaled his unpaid expense reimbursements as $5,775.00.  Mr. Joly also testified that he worked

---

Corp.  Plaintiffs presented sufficient facts showing that defendant agreed to this contract, and defendant never appeared to refute those facts.

at least 50 hours a week during his employment with defendant but received no overtime compensation.

## IV.    Conclusions of Law

### A.  Subject Matter Jurisdiction

"Before it may enter default judgment, the Court has an affirmative duty to determine whether it has subject matter jurisdiction."  *Olivas v. Bentwood Place Apartments, LLC*, No. 09-4035-JAR, 2010 WL 2952393, at *6 (D. Kan. July 26, 2010) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).  Federal courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Here, plaintiffs assert a claim for FLSA violations under 29 U.S.C. § 201 *et seq*.  Plaintiffs' lawsuit thus arises under federal law, and the court has subject matter jurisdiction under 28 U.S.C. § 1331.  The court also has supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367.

### B.  Personal Jurisdiction

A court also must have personal jurisdiction over a defendant before entering a default judgment.  *Bixler*, 596 F.3d at 761.  In a federal question case, like this one, a court can assert personal jurisdiction over a defendant if:  (1) the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant; and (2) the exercise of jurisdiction comports with due process.  *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (further citations omitted)).

The FLSA does not authorize nationwide service of process.  *Aviles v. Kunkle*, 978 F.2d 201, 203–04 (5th Cir. 1992); *Nicks v. Koch Meats Co., Inc.*, No. 16-cv-6446, 2016 WL 6277489,

at *3 (N.D. Ill. Oct. 27, 2016). So, Fed. R. Civ. P. 4(k)(1)(A) governs service. *See Dudnikov v. Chalk & Vermillion Fine Arts, Inc*., 514 F.3d 1063, 1070 (10th Cir. 2008) (explaining that Rule 4(k)(1)(A) applies when a federal statute does not provide for nationwide service of process). This rule requires the court to apply the law of the forum state where the district court is situated. Fed. R. Civ. P. 4(k)(1)(A).

Under the Kansas long-arm statute, a party submits to personal jurisdiction in Kansas for any claim for relief arising from transacting any business in this state or from entering into a contract with a Kansas resident. Kan. Stat. Ann. § 60-308(b)(1)(A) & (b)(1)(E). Kansas's long-arm statute is construed liberally to permit exercise of jurisdiction in every situation that is consistent with the United States Constitution. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (citation omitted); *see also* Kan. Stat. Ann. § 60-308(b)(1)(L) & (b)(2). Thus, the court need not conduct a separate personal jurisdiction analysis under Kansas law because the "first, statutory, inquiry effectively collapses into the second, constitutional, analysis." *Dudnikov*, 514 F.3d at 1070.

The court is satisfied that personal jurisdiction over defendant exists here. Plaintiffs' Amended Complaint alleges that defendant conducts business in Kansas. Doc. 3 ¶ 3. The Amended Complaint also alleges that defendant employed Ms. Sergiyenko in Kansas, *id.* at ¶ 1, and Ms. Sergiyenko testified as much. The Amended Complaint also alleges that defendant entered into a contract with Ms. Sergiyenko, a Kansas resident. *Id.* ¶¶ 1, 12. Ms. Sergiyenko testified about her contract with defendant, and plaintiffs introduced the contract as an exhibit at the hearing. Personal jurisdiction thus is proper because defendant has conducted business in Kansas and entered into a contract with a Kansas resident. *See*, *e.g.*, *Brandi v. Belger Cartage Serv., Inc.*, 842 F. Supp. 1337, 1341 (D. Kan. 1994) (noting that "there must be some act by

which the defendant purposefully avails himself or herself of the privilege of conducting business or other activities in the forum state, thus invoking the benefits and protections of the laws") (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Plaintiffs also served defendant as Federal Rule of Civil Procedure 4 requires. Plaintiffs served defendant's registered agent in Coffeyville, Texas, on July 14, 2017. Service in this manner complies with the requirements of Rule 4(h)(1). The court thus concludes that service properly was made, and the court has personal jurisdiction over defendant.

### C. Liability Under the FLSA and KWPA and for Breach of Contract

The facts here establish that defendant is liable to plaintiffs for the three claims asserted: (1) FLSA violation; (2) KWPA violation; and (3) breach of contract.

First, the FLSA requires an employer to pay minimum wage and overtime in an amount equal to time and a half of regular pay for an employee who works more than forty hours per week. 29 U.S.C. § 206(a) & 207(a)(1).[3] Here, plaintiffs testified that defendant never paid them for their work. Plaintiffs also testified that they regularly worked more than 40 hours per week but that defendant never paid them any overtime compensation. These facts establish that

---

[3]     The FLSA also requires a plaintiff to allege "sufficient facts to plausibly state a claim either (1) that she, individually, was engaged in commerce or (2) that [defendant] . . . is an enterprise engaged in commerce." *Reagor v. Okmulgee Cty. Family Res. Ctr.*, 501 F. App'x 805, 808 (10th Cir. 2012). The FLSA defines commerce as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Plaintiffs testified that defendant operates its business in Kansas and Texas. And, in those locations, plaintiffs and defendant's other employees regularly used telephones to communicate with people in other states. These facts sufficiently establish that plaintiffs were engaged in interstate commerce. *Reagor*, 501 F. App'x at 809 (explaining that a plaintiff may establish individual coverage under the FLSA if he or she "regularly and recurrently use[s] an instrument of interstate commerce, such as a telephone."). Thus, the FLSA's protections apply to plaintiffs here.

defendant violated the FLSA by failing to pay plaintiffs minimum wages and overtime compensation.[4]

Second, the KWPA requires an employer to "pay all wages due to the employees of the employer at least once during each calendar month, on regular paydays designated in advance by the employer."  Kan. Stat. Ann. § 44-314(a).  Here, only Ms. Sergiyenko asserts a KWPA claim against defendant.  She testified that defendant failed to pay her salary, commissions, and expenses for her work performed in Kansas.  She thus has established that defendant violated the KWPA by failing to pay her all wages due.

Finally, plaintiffs have established that defendant breached the written employment agreements.  The parties agreed in those contracts that Texas law would govern them.  A federal court exercising supplemental jurisdiction over state law claims in a federal question lawsuit applies the substantive law, including choice of law rules, of the forum state.  *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1104 (10th Cir. 1999) (citing *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996)).  In Kansas, when the parties to a contract have entered an agreement that incorporates a choice of law provision, Kansas courts generally apply the law chosen by the parties to control their agreement.  *Brenner v.*

---

[4]    Plaintiffs also have established that the FLSA does not exempt them from the overtime requirements.  Although the FLSA contains an exemption for salaried employees, an employer loses the right to treat eligible salaried employees as exempt from the overtime requirements in certain situations.  *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1188 (10th Cir. 2015).  For example, "[a]n employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis."  29 C.F.R. § 541.603.  Here, plaintiffs have established that defendant never paid them their promised salary.  And thus, under 29 C.F.R. § 541.603, defendant loses the right to treat plaintiffs as exempt employees.  Also, by defaulting, defendant fails to shoulder its burden to prove that plaintiffs are exempt from the FLSA overtime requirements.  *See Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008) ("While it is the employee's burden to prove that the employer is violating the FLSA, it is the defendant employer's burden to prove that an employee is exempt from FLSA coverage."  (citations omitted))).

*Oppenheimer & Co. Inc.*, 44 P.3d 364, 375 (Kan. 2002). So, the court applies Texas law to the breach of contract claims here.

In Texas, a breach of contract claim requires: "'(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *BCC Merchant Sols., Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 470 (N.D. Tex. 2015) (quoting *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)); *see also Viajes Gerpa, S.A. v. Fazeli*, 522 S.W.3d 524, 539 (Tex. Ct. App. 2016). Plaintiffs have established facts supporting each element of a breach of contract claim. Plaintiffs testified that a valid contract exists—their written employment agreements with defendant. Plaintiffs also testified that they performed work under those agreements, that defendant breached the contracts by failing to pay them their wages and expenses, and that plaintiffs have sustained damages from defendant's breach. Defendant thus is liable for breaching the written employment agreements.

### D.  Damages Under the FLSA and KWPA and for Breach of Contract

The court now must determine the damages that plaintiffs may recover for defendant's FLSA and KWPA violations and breach of contract. The court addresses each plaintiff's damages separately in the two subsections, below.

### 1.  Plaintiff Regina Sergiyenko

Ms. Sergiyenko seeks to recover: (1) her unpaid contract wages; (2) her unpaid expenses; (3) her unpaid overtime wages; (4) liquidated damages and penalties; and (5) attorney's fees. First, Ms. Sergiyenko is entitled to her unpaid contract wages and expenses. Defendant agreed to pay these wages and expenses in Ms. Sergiyenko's written employment

agreement.  But defendant breached the agreement by never paying Ms. Sergiyenko.[5]  Ms. Sergiyenko has established that defendant owes her $13,730.76 in unpaid salary and $2,055.94 in unpaid expenses.  So, the court awards Ms. Sergiyenko these damages.

Next, Ms. Sergiyenko is entitled to recover unpaid overtime compensation under the FLSA.  The FLSA requires an employer to pay overtime in an amount equal to time and a half of regular pay for an employee who works more than forty hours per week.  29 U.S.C. § 207(a)(1). Ms. Sergiyenko testified that she worked at least 52.5 hours a week during her six weeks of employment but never received overtime compensation.  So, she worked 12.5 hours of overtime every week for six weeks.  Ms. Sergiyenko calculates her basic rate of pay under 29 C.F.R. § 548.3(a) by dividing her salary by the number of hours she worked in a week ($2,288.46 weekly salary / 52.5 hours per week = $43.59 per hour).  She then calculates her overtime rate of pay under 29 C.F.R. § 548.2 by multiplying her hourly rate by the statutory rate of one and one half ($43.59 hourly rate x 1.5 = $65.38 overtime rate).  And she multiplies her overtime rate of pay by the number of overtime hours that she worked ($65.38 x 12.5 hours x 6 weeks = $4,903.50). This formula produces the overtime wages that defendant owes Ms. Sergiyenko—that is, $4,903.50.  Ms. Sergiyenko is entitled to recover those unpaid overtime wages under the FLSA.

Ms. Sergiyenko next seeks liquidated damages under the FLSA.  The FLSA requires the court to award liquidated damages against an employer who violates 29 U.S.C. § 206 or § 207. 29 U.S.C. § 216(b).  The amount of liquidated damages is "an additional equal amount" to "the amount of [the employee's] unpaid minimum wages, or [the employee's] unpaid overtime

---

[5]      Plaintiffs assert in their motion that their breach of contract damages "are subsumed in Plaintiffs' damages calculations for violations of the FLSA."  Doc. 10 at 5.  But plaintiffs provide no legal authority showing that the FLSA permits them to recover their unpaid contract wages.  Instead, the FLSA only provides for recovery of unpaid *minimum* wages and overtime compensation.  *See* 29 U.S.C. §§ 206–207. Nevertheless, plaintiffs can recover their unpaid contract wages under their breach of contract claim.

compensation, as the case may be." 29 U.S.C. § 216(b). Here, Ms. Sergiyenko seeks a liquidated damages award for an amount equal to her unpaid wages, unpaid expenses, and unpaid overtime wages ($13,730.77 + 2,055.94 + $4,903.86 = $20,690.57). But she provides no authority that allows that court to award liquidated damages under the FLSA in an amount equal to unpaid *contract* wages.[6] Instead, the FLSA provides only for an award of liquated damages in an amount equal to unpaid *minimum* wages. *See Smith v. BNSF Ry. Co.*, No. 06-2534-CM, 2008 WL 4758586, at *1 (D. Kan. Oct. 30, 2008) (holding that plaintiffs could not recover their "contractual wage set forth in the collective bargaining agreement" because the "FLSA only provides for recovery of the prevailing minimum wage" (first citing *DeLeon-Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214, 1219 (11th Cir. 2007); then citing and quoting *Foster v. Angels Outreach, LLC*, No. 2:06cv980-ID, 2007 WL 4468717, at *3 (M.D. Ala. Dec. 17, 2007) ("'Section 216(b) contains no provision for the recovery of unpaid wages which exceed the minimum wage.'"))).

So, here, the court can award Ms. Sergiyenko liquidated damages under the FLSA only in an amount equal to her unpaid overtime wages. That amount is $4,903.50. The court concludes that Ms. Sergiyenko is entitled to this amount of FLSA liquidated damages because, having defaulted, defendant has made no showing to avoid liquidated damages with evidence that it acted in good faith or reasonably believed that its actions did not violate the FLSA. *See* 29 U.S.C. § 260.

Although Ms. Sergiyenko cannot recover liquidated damages for her unpaid contractual wages, the KWPA permits the court to award her a penalty for defendant's willful failure to pay

---

[6]    She also provides no authority showing that the FLSA authorizes liquidated damages for unpaid business expenses.

her salary.[7]  The KWPA requires employers to pay "all wages due" to their employees.  Kan. Stat. Ann. § 44-314.  And when an employer willfully fails to pay an employee his or her wages due, the KWPA requires the employer to pay both the wages due and a penalty in an amount up to 100% of the unpaid wages.  Kan. Stat. Ann. § 44-315(b).  Here, Ms. Sergiyenko has established that defendant failed to pay her wages due and that its actions were willful.  Mr. McCusker repeatedly promised Ms. Sergiyenko that defendant would pay her for her work, and based on those promises, she continued working for the company.  These actions demonstrate defendant's willful failure to pay Ms. Sergiyenko.  Thus, she is entitled to a KWPA penalty for 100% of the amount defendant owed her in "wages due."  Kan. Stat. Ann. §§ 44-314, 44-315. So, the court awards $13,730.76 in KWPA penalties for Ms. Sergiyenko's unpaid contractual wages.

Finally, Ms. Sergiyenko is entitled to reasonable attorney's fees under the FLSA.  29 U.S.C. § 216(b).  The court awards Ms. Sergiyenko attorney's fees in the amount discussed in Part IV.E. of this Order.

### 2.  Plaintiff Russell Joly

Mr. Joly seeks to recover:  (1) his unpaid contract wages; (2) his unpaid expenses; (3) his unpaid overtime wages; (4) liquidated damages; and (5) attorney's fees.  First, Mr. Joly is entitled to his unpaid contract wages and expenses.  Defendant agreed to pay these wages and expenses in the written employment agreements.  But it breached the agreements by never paying Mr. Joly.  Mr. Joly has established that defendant owes him $10,384.56 in unpaid salary

---

[7]    The KWPA does not permit Ms. Sergiyenko to recover her unpaid expenses or a penalty for those unpaid expenses.  *See Larson v. FGX Int'l, Inc.*, No. 14-2277-JTM, 2015 WL 2449577, at *2 (D. Kan. May 22, 2015) (predicting that the Kansas Supreme Court would hold that reimbursements for business expenses "are neither wages nor recoverable under the KWPA").  Instead, Ms. Sergiyenko's recovery for unpaid expenses "lies in breach of contract, not under the KWPA."  *Id.*  Consistent with this authority, the court has awarded Ms. Sergiyenko her unpaid expenses as recovery for her breach of contract claim.

for his work in January and February 2017, and $6,000 in unpaid salary for his work in March

and April 2017.  He also has established that defendant owes him $5,775.00 in unpaid expenses.

The court thus awards Mr. Joly these damages.

Next, Mr. Joly is entitled to recover FLSA unpaid overtime compensation.  Mr. Joly

testified that he worked at least 50 hours a week during six weeks of his employment but

received no overtime compensation.  So, Mr. Joly worked 10 hours of overtime in each one of

those weeks.  Mr. Joly calculates his basic rate of pay under 29 C.F.R. § 548.3(a) by dividing his

salary by the number of hours he worked in a week ($1,730.76 weekly salary / 50 hours per week

= $34.62 per hour).  He then calculates his overtime rate of pay under 29 C.F.R. § 548.2 by

multiplying his hourly rate by one and one half ($34.62 hourly rate x 1.5 = $51.93 overtime rate).

And he multiplies his overtime rate of pay by the number of overtime hours that he worked

($51.93 x 10 hours x 6 weeks = $3,115.80).  This formula produces the overtime wages that

defendant owes Mr. Joly:  $3,115.80.  Mr. Joly is entitled to those unpaid overtime wages under

the FLSA.

Mr. Joly next seeks liquidated damages under the FLSA.  Mr. Joly seeks a liquidated

damages award for an amount equal to his unpaid contract wages and unpaid overtime wages.

But, like Ms. Sergiyenko, he provides no authority that allows that court to award liquidated

damages under the FLSA in an amount equal to unpaid *contract* wages.  As explained above, the

FLSA provides only for an award of liquated damages in an amount equal to unpaid *minimum*

wages.  Here, Mr. Joly never seeks an award for unpaid minimum wages.  So, the court cannot

award him FLSA liquidated damages for unpaid minimum wages.

Instead, the only FLSA liquidated damages that Mr. Joly can recover is for an amount

equal to his unpaid overtime wages—that is $3,115.80.  The court concludes that Mr. Joly is

entitled to this amount of FLSA liquidated damages because defendant, having defaulted, has adduced no evidence that it acted in good faith or reasonably believed that its actions did not violate the FLSA.  *See* 29 U.S.C. § 260.

Finally, Mr. Joly is entitled to recover reasonable attorney's fees under the FLSA.  29 U.S.C. § 216(b).  The court awards Ms. Joly attorney's fees in the amount discussed in the next section.

### E.  Attorney's Fees and Costs

The FLSA allows the court to award a prevailing plaintiff "a reasonable attorney's fee" and "costs of the action."  29 U.S.C. § 216(b); *Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014).  To determine a requested fee award's reasonableness, the court begins by calculating the "lodestar amount," which represents the number of hours reasonably expended multiplied by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Garcia v. Tyson Foods, Inc.*, No. 06-2198-JTM, 2012 WL 5985561, at *2 (D. Kan. Nov. 29, 2012), *aff'd* 770 F.3d 1300 (10th Cir. 2014).  The court then may adjust the lodestar upward or downward to account for various factors particular to the case.  *Garcia*, 2012 WL 5985561, at *5 (citing *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997)); *see also Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2015 WL 4920292, at *7 (D. Kan. Aug. 18, 2015).  This approach requires consideration of the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).  *Barbosa*, 2015 WL 4920292, at *7–8.  Those factors are:  (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time

limitations imposed by the client or circumstances;  (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

"'[T]he district court has discretion in determining the amount of a fee award,' which 'is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'"  *Olivo v. Crawford Chevrolet Inc.*, 526 F. App'x 852, 855 (10th Cir. 2013) (quoting *Hensley*, 461 U.S. at 437).  "But 'the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'"  *Id.* at 856 (quoting *Hensley*, 461 U.S. at 437).  "'The applicant should exercise "billing judgment" with respect to hours worked, . . . and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.'"  *Id.* (quoting *Hensley*, 461 U.S. at 437).

To support the fee request here, plaintiffs have submitted their counsel's billing records along with affidavits attesting to the reasonableness of the time counsel devoted to the lawsuit and providing information about counsel's experience, reputation, and ability.  Michael Hodgson, an attorney with 14 years' experience representing plaintiffs in employment related matters, including FLSA and KWPA claims, billed 47.8 hours of time to the litigation at an hourly rate of $550 for a total amount of $26,290.00.  Brian Barjenbruch, an attorney with 15 years' experience litigating federal and state matters, billed 10.9 hours to the litigation at an hourly rate of $300 for a total amount of $3,270.00.  Together, Mr. Hodgson and Mr. Barjenbruch's fees total plaintiffs' requested award of $29,560.00.

After reviewing the billing records, the court finds that the hours recorded are reasonable. Each specific task recorded is a proper charge for this matter, and the time spent on each task is reasonable. The court also finds that Mr. Barjenbruch's hourly rate, though on the high end of the approvable range, is reasonable in light of other, similar hourly rates approved by our court in employment cases involving counsel with similar experience. *See, e.g.*, *Barbosa*, 2015 WL 4920292, at *10 (Vratil, J.) (finding hourly rates ranging from $180 to $425 reasonable, depending on each attorney's level of experience, in an FLSA case); *Seamands v. Sears Holding Corp.*, No. 09-2054-JWL, 2011 WL 884391, at *14–16 (D. Kan. Mar. 11, 2011) (Lungstrum, J.) (finding the following hourly rates reasonable in a class action lawsuit for unpaid sales incentive compensation: $400 per hour for a lawyer with more than 30 years' experience, $290 per hour for lawyers with more than 20 years' experience, $270 for a partner with 11 years' experience, and $175 for associates with "lesser experience").

But Mr. Hodgson's proposed hourly rate is not a reasonable one in light of other hourly rates approved by our court for counsel with similar skill and experience.[8] The court thus reduces Mr. Hodgson's hourly rate to $300. With that reduction, Mr. Hodgson's fees total $14,340 (47.8 hours x $300 hourly rate). Adding Mr. Barjenbruch's fees of $3,270.00, the court calculates plaintiffs' total fee award as $17,610.00.

With this adjustment, the court concludes that plaintiffs' requested fee award is a reasonable one. Plaintiffs have supported their fee request adequately with the submitted billing

---

[8]     At the February 15 hearing, Mr. Hodgson referenced this court's decision in *Hoffman v. Poulsen Pizza, LCC*, No. 15-2640-DDC-KGG, 2017 WL 25386 (D. Kan. Jan. 3, 2017), where the court approved an hourly rate of $600 in an FLSA case. *Id.* at *7. The court approved the $600 hourly rate for only one of the three plaintiff's lawyers involved in that case—the one with the most experience in wage and hour cases. The court also noted that the rate was "on the high end of the approvable range" but was "reasonable in light of all the risks and other factors present in this case." *Id.* The court finds no similar reasons to approve the $550 hourly rate that Mr. Hodgson seeks here.

records and affidavits.  The court also has considered the *Johnson* factors discussed above.  It finds that the majority of those factors are neutral ones.  None of the *Johnson* factors present any reason for the court to adjust the lodestar upward or downward more than the court already has done by adjusting Mr. Hodgson's hourly rate.  The court thus awards plaintiffs $17,610.00 in attorneys' fees.

The court also awards plaintiffs' costs.  Plaintiffs' counsel have submitted records showing that Mr. Hodgson's firm incurred $1,353.69 in costs to litigate this case.  The court finds these costs reasonable and awards them to plaintiffs.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Amended Motion for Default Judgment against defendant McCusker Holding Corp. (Doc. 10) is **GRANTED**.

**IT IS FURTHER ORDERED THAT** judgment be entered in favor of plaintiff Regina Sergiyenko against defendant McCusker Holding Corp. in the amount of:  $13,730.76 for unpaid contract wages, $2,055.94 for unpaid expenses, $4,903.50 for FLSA unpaid overtime wages, $4,903.50 for FLSA liquidated damages, and $13,730.76 for KWPA statutory penalties.

**IT IS FURTHER ORDERED THAT** judgment be entered in favor of plaintiff Russell Joly against defendant McCusker Holding Corp. in the amount of:  $16,384.56 for unpaid contract wages, $5,775.00 for unpaid expenses, $3,115.80 for FLSA unpaid overtime wages, and $3,115.80 for FLSA liquidated damages.

**IT IS FURTHER ORDERED THAT** plaintiffs are awarded their attorneys' fees in the amount of $17,610.00 and costs in the amount of $1,353.69.

**IT IS SO ORDERED.**

Dated this 27th day of March, 2018, at Topeka, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge